211-1256, Illinois Tool Works v. Miroslav Kovic. Good morning, your honors. My name is Edward Hennessy. I represent Illinois Tool Works, the appellant in this matter. This case has kind of bounced around a bit like a pinball, so let me recite the course of this case a little bit for you. It was tried in 2005, placed in issue by Petitioner's Counsel that morning, was the nature and extent of his condition. The arbitrator ultimately denied his request or prayer for wage differential, finding that he did not approve the arbitration. He also denied the element of impairment of earnings or what he might be able to earn in suitable employment. That was appealed to the Commission. The Commission modified the decision as to penalties and various other things, but ultimately affirmed and adopted that finding and that rejection of wage differential. Instead, there was an award for 8E2, finding that they had met, that he wasn't going to go back to his usual and customary line of work, and that the element of earnings was lacking. And so the 8E2 awards stood. The claimant, Mr. Kukic, appealed to the Circuit Court in Lake County. The judge at that point reversed and remanded the case. And that's really central of what we're talking about today, as it is my client's request that this Court consider the propriety of that case, and that's what we're talking about today. Mr. Kukic's first turn of things improperly applied the standard on review. We believe that he simply substituted his own opinion for that of the Commission, and particularly he did that on issues of credibility. He doesn't give much to go on. We have an order from Judge McCoskey from March 18, 2009. Therein, in the preface, he states that the decision was against the manifest weight of the evidence. But then it goes on to state that the Court finds that the plaintiff petitioner met his burden of proof regarding wage differential, and that all evidence supported that conclusion. All evidence, what is he considering? The only thing, the only element that was necessary to prove wage differential that the arbitrator and the Commission found to be lacking was impairment of earnings. The only evidence that was offered at trial regarding that was, number one, the petitioner's own testimony regarding his job search, and number two, the testimony of the petitioner's vocational expert, Ms. Susan Entenberg. Arbitrator Urbacci expressly found the petitioner's job search to be invalid. He stated so in his decision. That decision was affirmed and adopted by the Commission. Arbitrator Urbacci expressly found Ms. Entenberg to be not credible. The Commission affirmed and adopted that decision. We contend that particularly when there are issues of credibility at issue, a question of fact remains. The de novo, essentially, in essence, de novo review by Judge McCoskey was improper, and for that reason we ask that his decision be vacated, as would be the decision on remand of the Commission, and that this Court adopt the original Commission decision. Thank you, Counsel. Counsel, you may respond. Good morning, Your Honors, Counsel, Edward Zapp on behalf of the appellee, Mr. Kukic. I'm going to just briefly touch upon the rest of the story that you didn't hear, but is addressed in my brief, and that is this is a 53-year-old Croatian immigrant. He came to the United States and worked in only one capacity for one employer his entire career before he was injured. He was a machinist, operating at the time about nine different machines, making a pretty high wage in a heavy-duty capacity. There is no question whatsoever from the medical that this gentleman could not continue in that capacity after this injury. Not only his treating physician, but Dr. Ed Goldberg, Section 12 IME physician for a respondent, opined that those permanent work restrictions prevent him from returning to his former occupation. Dr. Goldberg agreed that this gentleman still needs additional treatment by way of physical therapy, work hardening, and such, and the backdrop of this case is that all of the relief under the Act was denied here by this respondent. They denied accommodating his permanent work restrictions. Multiple requests for vocational rehabilitation were made. They denied every single request for voc rehab, which he is entitled to clearly with the permanent restrictions. No dispute, treating physicians and the IME physician, that he can't go back to work as a machinist. Yet this insurance carrier denied the vote, never prepared a written vote plan, never accommodated him, never did anything to assist him into making a transition into alternative employment consistent with the light-duty work restrictions that he was given. So the only issue that went up to the Commission was whether or not this gentleman proved up an impairment of earnings. The two tenants of 8D1 require a change in his capacity, a change in his occupation as a result of his incapacity. That was clearly established and addressed by the arbitrator and the Commission. But in rubber-stamping the arbitrator's decision, the Commission, without comment, affirmed the 40 percent man-as-a-whole award and never looked at the impairment of earnings that was established at trial. It was established through the petitioner's testimony. It was established through the medical records. And more to the point, it was established through the unrebutted testimony of the vocational expert. We want to weigh the credibility of Susan Ettenberg. I assume the trier of fact always has that opportunity to do that. But there is no dispute that Susan Ettenberg testified this gentleman did a proper job search, a valid job search, between January when they terminated his benefits and January when they terminated his benefits. And February 28th, when he obtained an alternative position, he looked for light-duty jobs within his restrictions. Sue Ettenberg testified he found suitable employment. He used a contact at the old job, a former employer, who offered him a light-duty position in the new position. So what was the wage he was able to earn in the new position? New position was $8 an hour. He was earning $1,400 an hour as a machinist in a heavy capacity. Sue Ettenberg said, well, that's a suitable position, and that's what he's earning, $8 an hour. But his earning capacity is probably somewhere in the range if he stays in that industry. Eight to 12? Eight to 15. That's why the $1,150, or right in the middle of that range, is the figure that was used by the commission for the wage differential. Whether he's at $8 an hour, which I argued, or he's at $1,150 an hour, either way he has an impairment of earnings. Either way, he's entitled to the max wage differential. There simply is no good argument put forth before this Court as to why the claimant failed to prove this impairment of earnings. It was established through his testimony. He looked for jobs within this new light-duty capacity. That light-duty capacity prevented him from earning that $1,400 an hour as a machinist. And I submit to you, this gentleman, without any vocational assistance, without any help that's required under the Act, and despite his situation culturally, less than a high school degree, and without any abilities here in the United States to work for any other employer, he found suitable employment as testified by Susan Ettenberg, which was unrebutted by the Respondent. Except they didn't find her credible. They didn't find that he conducted a proper job search. They didn't find Susan Ettenberg credible. And what was the reason for that? They said she didn't know what jobs that he looked for while he did that six weeks of job search. When she testifies and says he did a credible job search, that's not a fact, that's a conclusion. And the Commission has a right to draw its own conclusions and its own inferences. They knew what the facts were, and they turned around and said, this is not a sufficient job search. Well, the Commission never addressed that whatsoever. They just rubber-staffed the arbitrators of war. My point is that he's not even required to do a job search, good one or a bad one, in between. If he can prove an impairment of earnings, we don't even need the element of doing a proper job search. Well, how did he prove the impairment of earnings? Ettenberg's testimony. And his testimony that the position he found was suitable, consistent with the light-duty restrictions he received. Well, how does he know what's available in the marketplace? He's no vocational rehabilitation expert. No, no. He found a job. He found a job. He paid $8 an hour. And he found a job that was consistent with his new restrictions. The restrictions that he had did not allow him to return to a $1,400-an-hour-a-year position. Well, we understand that, but that's not the question. The question is, what could he earn? And the question is answered with Susan Ettenberg when she finds Estes' earnings capacity. And they found her not credible. Only not credible in the sense that she didn't know what jobs he looked for in that six weeks during his search. Not in the sense that she didn't look at the statistics from the Department of Labor regarding what this gentleman's earning capacity would be in that new physical demand. How did he establish this new job? Was the job within his restrictions? He testified to what he did as a light-duty assembly worker at the new position at CM Industries. He testified to what those requirements were for the light-duty assembly position. Sue Ettenberg testified that although he went in at the low end at $8 an hour, if he stayed there, his earning capacity would be somewhere between $8 and $15 an hour. So is that a little vague, though? What about the argument it undermines the efficacy of the opinion, $8 and $15? So what is it? That's a pretty broad range, isn't it? Well, I think why her opinion is credible is that he went in without any experience in that industry, that assembly industry, at the low end of it. If he stayed within that ability and he had some experience, he could expect an earning capacity in the future somewhere between $8 to $15. So what specific dollar amount, then, would the commission use between $8 and $15? I mean, how do they pick a number? Well, they used $8, which you earned, $3.20 a week. Or they used $11.50, which is the median between the $8 and the $15. Or they used the $15. The point is, he's incurred an impairment of earnings. And if we do the math, because of this gentleman's high wage, he's entitled to the max wage differential under any scenario that you have. The issue is, did he have an impairment of earnings? Arbitrator was critical that Sue Entenberg didn't know what jobs he looked for, but the petitioner testified to what jobs, Walmart, Echo, Walgreens, Sam's Club. He was very specific as to what jobs he looked for. Her testimony is relevant from the standpoint that she said, having found a job consistent with that light-duty restriction, based upon the statistics in the labor market, this is what he could expect for an earning capacity. What was he earning per hour before? He was earning $13.90 a week. I don't remember what the hourly was. But there's no question, when we look at this record, that the testimony regarding the earning impairment is unrebutted. It's not weight. It's not did he prove it or did he not prove it. Between his testimony, between the medical evidence that clearly shows he's unable to go back as a high-wage machinist, and between Sue Entenberg's testimony regarding his ability for earnings, it's clear he received an impairment of earnings. And it's clear from the backdrop of denying him all of the benefits that would have helped him transition, perhaps a higher level of earnings, were denied. And that's why two sets of penalties were issued against the respondent, both by the arbitrator and then by the commission. When Judge McCoskey decided this case, he made it clear. It was the manifest weight of the evidence standard of review that he applied. And he said very clearly, all of the evidence supports the conclusion that there was an earning impairment. And the Supreme Court has addressed that. That having proven a wage differential, that's the preference over a Schedule 8D2 loss. And that's why I believe the decision was in error by the commission initially, and why the circuit court review regarding the manifest weight of the evidence should stand. Thank you. Thank you, counsel. Counsel, reply. Thank you, Your Honors. Without a doubt, Judge McCoskey gave credence to testimony and evidence that had been deemed unreliable by the arbitrator and the commission. Why was it unreliable is the question. Oh, well, there is exposition on that by arbitrator. In some way, why is it unreliable? He points out you've got the claimant, you've got Entenberg. Okay, you've got a broad range. But even if you take the highest level, why isn't there some impairment of earnings here? He found Ms. Entenberg's testimony to be particularly defective. She didn't take into consideration all kinds of things, including the fact that he had a high-paying supervisory job at the employer pre-injury, and he didn't look for any work that was comparable at the point. She didn't know how many jobs he had looked for, the type of businesses he had directed his applications. There were numerous deficiencies that he enumerated in his decision. With respect to the job search, he noted that he testified that he looked at 14 different places, could mention only four, and there's no evidence that he actually submitted applications. Furthermore, none of these positions that he applied for were comparable to what he did before. He was a supervisor. The testimony reveals he was a supervisor in control or in oversight of 20 employees, and so he takes a light-duty assembly position for $8 an hour, and the arbitrator is asked to accept that as evidence of suitable employment. We'll remind the court of the precedent that that's not dispositive on that. It's what he's able to earn. It's what he's capable of earning, not what he is earning. That's what we're looking at. And ultimately, the arbitrator found there was insufficient evidence to make the assessment as to what his earning capacity, what that loss of earnings was, what the impairment of earnings was. He said, the arbitrator even said, even if I were to accept that this was a valid job search, which he didn't, but even if he were, he couldn't put a number on it. And then the irony of all this is Judge McCoskey, by remanding it to the commission with instructions to write a wage differential that the commission didn't find in the first place, he instructed them to look to evidence that they had already found to be specifically not credible. They went to Susan Entenberg's numbers again, her range, which was already not considered reliable. They identified, they adopted the median number. And that's the award that stands. That's one of the awards I'd like you to vacate today. Thank you, Your Honors. I think I've made my point. Thank you, Counsel, this matter has taken an advisement on a dispositional issue.